**George MILAI, Plaintiffs,**

v.

**TRADEWIND INDUSTRIES, INC., a foreign corporation, Defendant and Third-Party Plaintiff,**

v.

**UNITED STATES of America, and Bonus-Bilt, Inc., a foreign corporation, Third-Party Defendants.**

No. 80–74255.

United States District Court, E.D. Michigan, S.D.

Aug. 13, 1982.

Gerald D. Keller, Southfield, Mich., for plaintiffs.

Barry F. LaKritz, Southfield, Mich., for Tradewind Indus.

Maureen Holahan, Troy, Mich., for Bonus-Bilt, Inc.

Ellen G. Ritteman, Asst. U.S. Atty., Detroit, Mich., for the U.S.

## OPINION AND ORDER GRANTING MOTION TO DISMISS

ANNA DIGGS TAYLOR, District Judge.

The instant complaint is brought by a United States Postal Service employee who was injured on January 16, 1978, while unloading mail from a container manufactured by defendant Tradewind Industries. Plaintiff filed suit asserting this court's diversity jurisdiction, on a theory of product liability. Defendant answered the complaint and later filed a Third-Party Complaint against the federal government and Bonus-Bilt, Inc. Defendant alleges that both of those third-party defendants are liable to it for indemnification and contribution, and bases jurisdiction on both the Federal Tort Claims Act, 28 U.S.C. § 2671 *et seq,* and ancillary jurisdiction.

Defendant United States has moved to dismiss the third-party complaint on several grounds, which have been briefed and argued to the court. That motion must be and hereby is granted, for the reasons set forth in this opinion.

Defendant's theory is that the government "conceived of" and "designed" the product in question, and provided design specifications to defendant, for its use in the manufacturing process. The third-party complaint cites the Federal Tort Claims Act, and seeks recovery in contribution, common law indemnity, express contractual indemnity and implied contractual indemnity theories. These various theories are vaguely intermingled and identified in the complaint without clear demarcation, which fact has led to a multi-faceted attack by the federal defendant.

■ Assuming arguendo that the complaint is grounded in contractual indemnity, defendant maintains that jurisdiction thereof lies solely in the U.S. Court of Claims. That court has exclusive jurisdiction of all civil claims against the United States founded upon "any express or implied contract with the United States" which exceed $10,000 in amount (28 U.S.C. § 1346(a)(2) and 28 U.S.C. § 1491.) The indemnity or contribution claim brought by defendant herein exceeds that jurisdictional amount as plaintiff seeks $55,000 in compensatory damages for his injury. If defendant had chosen to wait to file this third-party claim, as was its right, until resolution of the main action, this jurisdictional problem might not have occurred. Plaintiff's damages would then have been a sum certain, perhaps less than $10,000. But that is not the present circumstance, and at present this court has no subject matter jurisdiction of any express or implied contract-based claim. See, *Murray v. U.S.,* 405 F.2d 1361 (D.C.Cir. 1968), *Travelers Ins. Co. v. U.S.,* 493 F.2d 881 (3d Cir.1974), *Galimi v. Jetco,* 514 F.2d 949 (2d Cir.1975).

The court notes that defendant abandons the contractual indemnity theory in its brief, despite the fact that it is clearly raised in the complaint. Whether defendant still intends to rely upon it or not, that theory does not provide a basis for this court's jurisdiction either.

■ Defendant appears to rely upon its common law indemnity claim instead, which theory turns on historic policies of third-party liability in relationships between a plaintiff, defendant and indemnitor. Indemnity is a close cousin to contribution, which defendant has also mentioned in its complaint and brief in opposition to the motion to dismiss. The theory applicable here is indemnity, and not contribution, though the two are frequently confused by litigants. Contribution is the method by which a tortfeasor sues a joint tortfeasor for its share of a joint liability to an injured plaintiff. Indemnity is the device by which a tortfeasor "passes through" his entire liability to a third party whom the tortfeasor alleges is the real party responsible for the injury.

Neither type of claim can be maintained against the United States in this case.

■ It is undisputed that any direct liability of the government to this plaintiff must be resolved through the provisions of

the Federal Employees Compensation Act, 5 U.S.C. § 8101 *et seq.* The Act is not unlike a state workers' compensation statute, and is the exclusive remedy for federal employees who are injured in the workplace, 5 U.S.C. § 8116(c). The device completely replaces the right of litigation against the federal government which would otherwise inure to the injured employee.

The exclusive and preclusive nature of the FECA is a bar to defendant's suit against the federal government here precisely because the underlying liability of defendant to plaintiff has been absolved, and the purpose of the FECA is to sharply limit the liability of the government arising out of on-the-job injuries.

The exclusivity provisions read as follows:

> The liability of the United States or an instrumentality thereof under this subchapter ... with respect to the injury or death of an employee is exclusive and instead of all other liability of the United States ... to the employee, his legal representative, spouse, dependents, next of kin, and any other person otherwise entitled to recover damages from the United States ... because of the injury or death in a direct judicial proceeding, in a civil action, or in admiralty, or by an administrative or judicial proceeding under a workmens' compensation statute or under a Federal tort liability statute. . . .

This court will not strain the phrase "any other person otherwise entitled to recover damages from the United States ... because of the injury" so far as to include allegedly negligent manufacturers such as defendant here. *United Air Lines v. Wiener,* 335 F.2d 379 (9th Cir.1964). However, to allow defendant's claim here would be tantamount to undermining the intent and legislative scheme of the Congress. Numerous district and circuit courts have confronted this issue. The Second Circuit has observed:

> [it is] one of those recurring puzzling situations where a federal statute has met differing interpretations in several circuits on a question that requires legis-

lative resolution but which the Congress has, nevertheless, not yet addressed, *Galimi v. Jetco,* 514 F.2d 949 at 950.

Nevertheless, the majority of circuits which have considered the issue have concluded that claims against the United States such as this are barred. *United Air Lines v. Wiener, supra,* (9th Cir.1964); *Wein Alaska Airlines v. United States,* 375 F.2d 736 (9th Cir.1967). *Travelers Ins. Co. v. United States, supra,* (3d Cir.1974), *Galimi v. Jetco, supra,* (2d Cir.1975), *Kudelka v. American Hoist,* 541 F.2d 651 (7th Cir.1976), *Thomas v. Lockheed,* 665 F.2d 1330 (D.C.Cir.1981). The Fourth Circuit stands alone in its holding that such actions may be brought, *Wallenius Bremen GmBh v. United States,* 409 F.2d 994 (4th Cir.1969), and this court must conclude that the Fourth Circuit's conclusion is based upon an erroneous interpretation of precedent.

Our analysis must begin with the Supreme Court's decision in *Weyerhaeuser S.S. Co. v. United States,* 372 U.S. 597, 83 S.Ct. 926, 10 L.Ed.2d 1 (1963). In that case, a collision between two ships (one privately-owned and the other owned by the federal government) resulted in the filing of suit by an injured U.S. Civil Service employee, against the private shipowner. After settlement of that suit for $16,000, the defendant shipowner brought an action against the United States under the Public Vessels Act, 46 U.S.C. § 781. In holding that such an action could be maintained, despite the FECA exclusivity provision, the court acknowledged the existence of over 100 years of admiralty law proclaiming the "divided damages" rule, and permitting just such suits by one shipowner against another, arising out of collisions.

During the same court term, the court faced a similar fact situation in a non-admiralty setting, and reversed the Third Circuit for dismissing an indemnity suit such as the one at hand. That reversal came in a one paragraph, *per curiam* decision, wherein the court remanded "for further consideration in light of *Weyerhaeuser*", *Treadwell v. United States,* 372 U.S. 772, 83 S.Ct. 1102, 10 L.Ed.2d 136 (1963). The Supreme Court

has not ruled again on this point, and the circuits have not, consequently, resolved the cryptic meaning of that order. The overwhelming majority of them, however, have declined to apply the *Weyerhaeuser* rule beyond the admiralty context. (See cases cited above.)

The circuits which have written on the issue have held that where the underlying liability of the government, to an injured employee, has been abrogated by "no-fault" compensation scheme, and where litigation between those parties is barred by the exclusivity of that scheme, there can be no suit by a third-party tortfeasor, in indemnity, against the government. The only exceptions to this rule, recognized by the Second, Third, Seventh, Ninth or D.C. Circuits, have been in cases in which there is an express or implied contract between the government and third party, giving rise to the duty upon which suit is founded (such actions lying only in the U.S. Court of Claims if they exceed $10,000 in value), or where there is a right of indemnity created by well-established law (such as the admiralty law crucial to the *Weyerhaeuser* result).

The purpose of the FECA was to eliminate litigation between the federal government and its injured employees, and to replace it with a more predictable and evenly equitable compensation scheme which awards compensation to each employee based on the nature of his injury, and sets a ceiling for the government's ultimate liability. In fact, the government's payments to the employee under this system are *reduced* by the amount which that employee recovers from a third-party tortfeasor, 5 U.S.C. § 8132. The statute would become an exercise in futility if third-party indemnity suits, directly against the government, were also permitted.

In the absence of any elucidation from Congress, the courts have relied upon their own analysis of the FECA, and upon two analogies. The first of these is the bar against third-party claims against employers of longshoremen, where the employee/longshoremen's injury claims are re-solved exclusively through the Longshoremen's and Harbor Worker's Compensation Act, 33 U.S.C. § 901, *et seq.* Section 905 of the Act, the exclusivity provision, is nearly identical to the same portion of the FECA. See *Halcyon Lines v. Haenn Ship Ceiling and Refitting Corp.,* 342 U.S. 282, 72 S.Ct. 277, 96 L.Ed. 318 (1952), and Justice Marshall's explanation of the full meaning of *Halcyon* in *Cooper Stevedoring Co., Inc. v. Kopke, Inc.,* 417 U.S. 106, 94 S.Ct. 2174, 40 L.Ed.2d 694 (1974). The second analogy is found in recent extensions of the *Feres* doctrine, which evolved from the Supreme Court's decision in *Feres v. United States,* 340 U.S. 135, 71 S.Ct. 153, 95 L.Ed. 152 (1950). In that case, the court held that an on-duty serviceman who is injured due to the government's negligence is limited to recovery under the "no-fault" scheme of the Veterans' Benefits Act, 38 U.S.C. § 321, *et seq.,* and may not sue the government under the Federal Tort Claims Act. The court has recently held that an independent third-party tortfeasor may not bring an indemnity action against the government, where the tortfeasor has been sued by the injured serviceman, *Stencel Aero Engineering Corp., v. United States,* 431 U.S. 666, 97 S.Ct. 2054, 52 L.Ed.2d 665 (1977). In a 7–2 decision, the Supreme Court held that to allow an indemnity action in those circumstances would negate the important protective purposes of the Veterans' Benefits Acts, and expose the government to precisely the unlimited and uneven liability which the Act sought to curtail. The court warned against subverting the effectiveness of federal "no-fault" schemes (citing the longshoreman context again) by allowing indemnity suits in through the back door.

The resolution of this issue is troublesome, and the analysis by previous courts voluminous and complex. It simply is not possible to reconcile all of the conflicting interests at hand. Nevertheless, this court adopts the reasoning of the majority of circuits on the issue, rejects the holding of the sole circuit to reach a contrary result, and finds that protection of the FECA

**40**

scheme demands the dismissal of the defendant's third-party complaint.

IT IS SO ORDERED.