**CENTRAL ILLINOIS PUBLIC SERVICE COMPANY, et al., Plaintiffs,**

v.

**INDUSTRIAL OIL TANK & LINE CLEANING SERVICE, et al., Defendants.**

No. 89–0703–CV–W–1.

United States District Court, W.D. Missouri, W.D.

Feb. 21, 1990.

James W. Benjamin, Douglas N. Ghertner, Field, Gentry, Benjamin & Robertson, P.C., Kansas City, Mo., Sheldon A. Zabel, Gabriel M. Rodriguez, Eric L. Lohrenz, Schiff, Hardin & Waite, Chicago, Ill., for plaintiffs.

John L. Hayob, Niewald, Waldeck, Norris & Brown, Kansas City, Mo., Douglas J. Miller, Hall, Morse, Gallagher & Anderson, Concord, N.H., Lloyd S. Hellman, Bernard L. Balkin, Sandler, Balkin, Hellman & Weinstein, Kansas City, Mo., B.C. Hart, Dennis M. Coyne, Hart, Bruner & O'Brien, P.A., Minneapolis, Minn., David R. Hunt, Ross, Hunt, Spell & Ross, Clarksdale, Miss., Michael W. Walker, Farris & Walker, Kansas City, Mo., Michael W. Peters, Topeka, Kan., Stuart S. Lowry, Lowry & Johnson, Valley Falls, Kan., Frederick G. Apt, Jr., Iola, Kan., Sheldon D. Korlin, Johnson, Lucas, Bush, Snapp & Burgess, Kansas City, Mo., Kenneth O. Smith, Knipmeyer, McCann, Smith, Manz & Gotfredson, Kansas City, Mo., Jefferson G. Broady, Rock Port, Mo., Laurel J. Harbour, James Otis Neet, Jr., Shook, Hardy & Bacon, Kansas City, Mo., Danna C.F. Brabender, Niewald, Waldeck, Norris & Brown, P.C., Kansas City, Mo., Michael G. Norris, Niewald, Waldeck, Norris & Brown, Overland Park, Kan., Daniel Bukovac, Watson, Ess, Marshall & Enggas, Kansas City, Mo., James G. Trimble, Parkville, Mo., John L. Sandy, Sandy Law Firm, Spirit Lake, Iowa, Elizabeth M. Drill, Brown, Koralchik & Fingerish, Kansas City, Mo., for defendants.

## ORDER

WHIPPLE, District Judge.

In this lawsuit plaintiffs seek a declaratory judgment to determine defendants' liability for costs related to hazardous waste treatment and disposal under the Comprehensive Environmental Response, Compensation and Liability Act of 1980 (CERCLA), 42 U.S.C. §§ 9601 *et seq.* Plaintiffs also want to recover those costs. Various motions [1] are pending:

1. Plaintiffs' motion, filed November 3, 1989, to dismiss counterclaims filed by defendant Broome County, New York ("Broome") on October 16, 1989. Broome filed suggestions in opposition November 15, 1989. Broome filed an amended answer and counterclaims on November 22, 1989, superseding the original counterclaims. Motion is denied as moot.

2. Plaintiffs' motion, filed December 12, 1989, to dismiss counterclaims filed by defendant Van Buren Light & Power District ("Van Buren") on November 22, 1989. Van Buren filed suggestions in opposition December 22, 1989. Plaintiffs filed supplemental suggestions in support of the motion January 16, 1990. Defendants Van Buren and Broome filed a joint reply in opposition January 25, 1990. Motion is granted.

3. Plaintiffs' motion, filed December 12, 1989, to dismiss counterclaims filed by defendant Broome on November 22, 1989. In response, Broome filed a motion to strike plaintiffs' motion December 22, 1989. In the alternative, Broome's response was suggestions in opposition to the motion to dismiss. Plaintiffs filed supplemental suggestions in support of the motion to dismiss January 16, 1990. The joint reply filed by defendants Van Buren and Broome on January 25, 1990, also applied to this motion to dismiss Broome's November 22, 1989, counterclaims. Motion is granted.

4. Defendant Broome's motion, filed December 22, 1989, to strike plaintiffs' motion, filed December 12, 1989, to dismiss Broome's November 22, 1989, counterclaims. Plaintiffs filed suggestions in opposition January 4, 1990. Motion is denied.

5. Plaintiffs' motion, filed January 10, 1990, to dismiss counterclaims of the Mississippi cities of Kosciusko, Canton, and Clarksdale ("the Cities"). The Cities filed their opposition January 22, 1990. Plaintiffs replied February 5, 1990. The Cities filed another reply February 13, 1990. Motion is granted.

---

1. A proposed scheduling order, filed February 8, 1990, will be the subject of a separate order.

6. Plaintiffs' motion, filed January 10, 1990, to dismiss with prejudice defendants Rock Port Board of Public Works, Fargo Public Schools, and Fred Hawn d/b/a Hawn's Auto Body, pursuant to a settlement agreement. Motion is granted.

7. Plaintiffs' notice, filed January 10, 1990, of voluntary dismissal without prejudice defendants Krafcor Corporation, Substation Testing Service, Inc., Master Maintenance and Towing Co., and Transcycle Industries, Inc., for failure to locate to serve process. Dismissal without prejudice is granted.

### I. Statement of the Case

Plaintiffs filed their first amended complaint November 2, 1989, with only minor changes from their original complaint of July 25, 1989. It names 16 plaintiffs and 24 defendants. Solely for convenience, some of the statement here is drawn from plaintiffs' allegations.

The dispute concerns who will pay for treatment and disposal of hazardous substances at a facility ("the Rose Site") once operated by Martha C. Rose Chemicals, Inc. in Holden, Missouri. Specifically, the substances are polychlorinated biphenyls ("PCBs"), PCB items, and PCB-contaminated materials. The PCBs commonly could be found in fluid for electrical equipment, such as transformers and capacitors.

From 1983 to 1986, PCB materials were shipped to the Rose Site for storage, processing, treatment and disposal. Rose abandoned the site in 1986, and went bankrupt. The Environmental Protective Agency ("EPA") notified plaintiffs, defendants and others of their status as potentially responsible parties ("PRPs") under the CERCLA statute. While EPA engaged in clean-up negotiations with some plaintiffs, a steering committee undertook to treat and dispose of the materials.

Certain plaintiffs on the steering committee, and others, entered into an administrative order on consent (AOC I) with EPA, providing for initial activities such as assessment, security and stabilization of the site. A second agreement (AOC II) provided for removal, evaluation, containment and mitigation at the site. The second agreement also provided that PRPs who settled later with plaintiffs would be deemed settled with the EPA. EPA officials signed both agreements. Operations began, and are expected to continue, at considerable expense.

The steering committee approached potentially responsible parties ("PRPs"), who are generators and transporters of hazardous substances. Such parties apparently include some or all defendants. The committee proposed they enter one of two alternative agreements to resolve all or some of their potential liability under CERCLA. The agreements were to provide for sharing of expenses which had been, and would be, incurred. One of them, the "Buyout Agreement," also provided for the committee members to indemnify the buyout parties for costs and certain claims relating to liability at the site.

Defendants did not participate in the agreements. Plaintiffs seek a declaration of defendants' liability, and contribution for costs of the operation. They rely on 42 U.S.C. §§ 9607 and 9613(f)(3)(B). They also seek litigation costs and attorneys' fees. Defendants Broome and Van Buren have filed answers and counterclaims. First they contend they are not liable. Alternatively they contend that, if liable, they are entitled to indemnity or contribution from plaintiffs for such liability. They also ask for a declaration that, if liable, they should pay only their equitable share of costs. They seek litigation costs and fees, too. Defendant Cities counterclaim for (1) declaration that plaintiffs' demands were unlawful, (2) declaration of liability for only an equitable share of clean-up costs, (3) declaration that they are not liable for interest beyond that permitted by 42 U.S.C. § 9607(a), and (4) litigation costs and attorney fees.

### II. Motions

A. Motions to Dismiss

*1. First Motion to Dismiss Broome's Counterclaims*

■ Plaintiffs filed a motion November 3, 1989, to dismiss counterclaims filed by

defendant Broome on October 16, 1989. Broome filed suggestions in opposition November 15, 1989. Broome filed an answer and counterclaims on November 22, 1989, in response to plaintiffs' first amended complaint, filed November 2, 1989. The amended complaint supersedes the original complaint and, thus, no longer is part of this action. *See*, Wright & Miller, 6 *Federal Practice & Procedure*, § 1476 at 556–559 (1990) and cases cited therein. Accordingly, the new answer and counterclaims supersede the original answer and counterclaims. Therefore, the motion to dismiss the original counterclaims is moot, and will be denied as such.

### 2. Motion to Dismiss Van Buren's Counterclaims

The December 12, 1989, motion contends Van Buren fails to state a claim. Van Buren's counterclaim states, in part, that if it is liable to plaintiffs, then:

> * * * [P]laintiffs are jointly and severally liable to defendant Van Buren for indemnification of all costs of any declaratory judgment or other relief imposed upon Van Buren, and all damages, costs, attorneys' fees and other monetary liability assessed against Van Buren and in favor of plaintiffs, or, alternatively, for contribution to Van Buren, of plaintiffs['] respective, proportionate and fair share of such costs, damages, attorneys' fees and monetary relief, all pursuant to Van Buren's rights of noncontractual indemnity and contribution arising under CERCLA, 42 U.S.C. § 9607(e)(2) and 42 U.S.C. § 9613(f), Federal and state common law and under all other applicable Federal, state and local statutes and regulations.

#### a. Arguments

Essentially plaintiffs argue that Van Buren has failed to set forth any basis in law or fact to support its claims. First, quoting 42 U.S.C. § 9613(f)(1) [2], plaintiffs argue that any claim for contribution can arise only under that statute and that there is no other basis in law for seeking contribution. Second, relying on 42 U.S.C. § 9607(e)(2) [3], plaintiffs contend that indemnity cannot be sought unless a contract has provided for it. Plaintiffs urge that Van Buren has not shown such a contract, or any independent basis in law for seeking indemnity without one. Third, plaintiffs note that the alternative claim for equitable sharing of costs is redundant because that matter will be resolved when the plaintiffs' contribution claim is adjudicated.

Van Buren responds that those two sections, their legislative history, and case law support contribution and non-contractual indemnity. Van Buren also relies upon Missouri case law which provides for non-contractual indemnity and contribution among joint tortfeasors. Van Buren further notes that, contrary to plaintiffs' argument, it may rely on alternative (even mutually exclusive) theories.

#### b. Discussion

Generally, CERCLA provides a scheme whereby the persons responsible for generating, handling, brokering and/or transporting hazardous materials ultimately may be held liable for treating or disposing of them. See 42 U.S.C. § 9607. If, as here, the materials handler fails to do the job properly, the federal government may attend to it and charge the expense to responsible parties. On the other hand, some or all responsible parties may attend to the clean-up directly. The parties may be liable directly to the government, or to each other. The statute provides elaborate means for resolving that liability. See 42 U.S.C. §§ 9607, 9613, and 9614. The scheme is designed to promote quick action by encouraging settlements among potentially responsible parties. See 1986 U.S. Code & Admin.News 2835, 2862; *United States v. Cannons Engineering Corp.*, 720 F.Supp. 1027 (D.Mass.1989); *United States v. Monsanto*, 858 F.2d 160, 173 n. 29 (4th Cir.1988).

#### (1.) Contribution

In this instance, settlements have been reached between the government (EPA)

---

2. CERCLA Section 113(f)(1).

3. CERCLA Section 107(e)(2)

and some parties, including the plaintiffs, to resolve their liability under Section 9607. The settlement agreements purport to be signed by EPA officials, and no defendant has challenged that they have administrative approval. The second agreement, AOC II, includes a covenant not to sue, and no defendant has suggested it is not a settlement. Plaintiffs have brought this lawsuit to obtain contribution from defendants, pursuant to 42 U.S.C. § 9613(f) (1986), which provides:

**(1) Contribution**

Any person may seek contribution from any other person who is liable or potentially liable under section 9607(a) of this title, during or following any civil action under 9606 of this title or under section 9607(a) of this title. Such claims shall be brought in accordance with this section and the Federal Rules of Civil Procedure, and shall be governed by Federal law. In resolving contribution claims, the court may allocate response costs among liable parties using such equitable factors as the court determines are appropriate. Nothing in this subsection shall diminish the right of any person to bring an action for contribution in the absence of a civil action under section 9606 or section 9607 of this title.

**(2) Settlement**

A person who has resolved its liability to the United States or a State in an administrative or judicially approved settlement shall not be liable for claims for contribution regarding matters addressed in the settlement. Such settlement does not discharge any of the other potentially liable persons unless its terms so provide, but it reduces the potential liability of the others by the amount of the settlement.

**(3) Persons not party to settlement**

(A) If the United States or a State has obtained less than complete relief from a person who has resolved its liability to the United States or the State in an administrative or judicially approved settlement, the United States or the State may bring an action against any person who has not so resolved its liability.

(B) A person who has resolved its liability to the United States or a State for some or all of a response action or for some or all of the costs of such action in an administrative or judicially approved settlement may seek contribution from any person who is not party to a settlement referred to in paragraph (2).

(C) In any action under this paragraph, the rights of any person who has resolved its liability to the United States or a State shall be subordinate to the rights of the United States or the State. Any contribution action brought under this paragraph shall be governed by Federal law.

By its plain language, subsection (f)(2) provides protection for settling parties from claims for contribution. Yet, Van Buren argues that it does not preclude actions grounded in law outside CERCLA. It relies on 42 U.S.C. § 9607(e)(2):

(2) Nothing in this subchapter, including the provisions of paragraph (1) of this subsection, shall bar a cause of action that an owner or operator or any other person subject to liability under this section, or a guarantor, has or would have, by reason of subrogation *or otherwise* against any person.

(emphasis added). Accordingly, Van Buren claims, it can seek contribution pursuant to Sections 9607(e)(2) and 9613(f), and "Federal and state (Missouri) common law and under all other applicable Federal, state and local statutes and regulations." Answer and counterclaims, at 24. The only law discussed in its briefs, however, is the two CERCLA sections, and federal and state common law. So, only they will be explored here.

The two sections can be reconciled by reviewing the legislative history and carefully examining the cases which have applied the statute. In *United States v. Cannons Engineering Corp.*, 720 F.Supp. 1027, 1048–1049 (D.Mass.1989), the court rejected contribution claims after examining the purpose of section 9613(f):

In amending CERCLA in 1986, Congress added section 113(f)(1), 42 U.S.C. § 9613(f)(1), creating an express right of

contribution among parties found liable to the United States or a State. Congress simultaneously added section 113(f)(2), which provides that contribution actions cannot be maintained against parties who have settled their liability to the United States or a State for matters covered by the settlement. 42 U.S.C. § 9613(f)(2). Section 113(f)(2) expressly states that in the event of a settlement the joint and several liability of non-settling defendants is reduced "by the amount of the settlement."

The court noted that Congress had the goal of encouraging settlements. See 1986 U.S. Code & Admin.News 2835, 2862. The incentive was explained in *City of New York v. Exxon Corp.*, 697 F.Supp. 677, 681 (S.D. N.Y.1988):

> * * * Settlement pursuant to Section 113(f)(2), 42 U.S.C. § 9613(f)(2), which on its face governs only settlements by "the United States or a State," may subject non-settling CERCLA defendants to a disproportionate share of liability from which they would otherwise be protected, and may also subject them to contribution actions by settling defendants which might otherwise be barred. * * *

The court elaborated in footnote 5:

> * * * * * *
>
> These provisions place non-settling CERCLA defendants at a disadvantage in two ways. First, it leaves them open to contribution claims from settling defendants who have paid more than their proportionate share of liability. Second, if settling defendants have paid *less* than their proportionate share of liability, section 113(f)(2) apparently compels the non-settlers to absorb the shortfall.

In *Lyncott Corp. v. Chemical Waste Management, Inc.*, 690 F.Supp. 1409, 1418–1419 (E.D.Pa.1988), the court even extended "contribution protection" to a private settlement. ("By 'contribution protection' I mean a guaranty for settling parties that they will not later be found liable for contribution to nonsettlers." *Id.* at n. 4.) The

court said, at 1419, it was granting such protection because "[t]hese concepts are in accord with the Superfund Amendments and Reauthorization Act of 1986.... See 42 U.S.C. §§ 9613(f)(2) and 9622(h)(4) (West Supp.1987) (authorizing contribution protection in cases of settlement with the government)."

As these cases illustrate, the scarce federal common law gives full meaning to the statutory protection for settling parties from contribution claims by non-settling parties. Reconciling Sections 9607 and 9613 is even more apparent in *Edward Hines Lumber Co. v. Vulcan Materials Co.*, 685 F.Supp. 651, 657–658 (N.D.Ill. 1988), *aff'd*, 861 F.2d 155 (7th Cir.1988). In that case the court acknowledged:

> * * * [F]ederal common law rather than state law determines the availability of an action for contribution *against parties that are liable under CERCLA.* Wehner v. Syntex [Agribusiness Inc.], 616 F.Supp. 27, 31 (E.D.Mo.1985); Colorado v. ASARCO, Inc., supra [608 F.Supp. 1484, 1492 (D.Colo.1985)]; U.S. v. Ward, supra [22 Env't Rep.Cas. (BNA) 1235, 1984 WL 15710 (E.D.N.C. 1984)], United States v. Chem–Dyne Corp., 572 F.Supp. 802, 808–09 (S.D.Ohio 1983).[4] * * *

(emphasis in original). However, as the court also noted at 658, parties who are *not* liable under CERCLA are not restricted to federal common law:

> * * * The courts did not state or suggest that CERCLA preempts any state law remedies to recover the costs of site cleanup from parties who are not liable under CERCLA but are potentially liable under state law. Indeed, in [*U.S. v.*] *Conservation Chemical* [*Co.,* 619 F.Supp. 162 (W.D.Mo.1985)], ... the court suggested the contrary of defendants' position:
>
> > Congress did not intend to preclude actions under CERCLA for contribution, but rather intended that the scope of liability for contribution under 42

---

**4.** In these three cases, the courts found that CERCLA implied a right of contribution for liable parties. They were decided before 1986,

when Congress expressly provided for contribution.

U.S.C. § 9607 be determined as a matter of federal common law, by superseding or *supplementing existing state remedies*.

(Emphasis added) 619 F.Supp. at 229.

(Of course, when Congress amended CERCLA in 1986, one year after *Conservation Chemical* was decided, Congress showed its intent more clearly. That is, it intended to preclude contribution actions by nonsettling parties against those parties which settled with the government, while leaving the contribution actions under state law available against parties not subject to CERCLA. *See* 42 U.S.C. §§ 9613(f)(2), (3), and 9622(h).) The court in *Edward Hines Lumber* concluded that CERCLA did not bar an action available under state law for contribution from parties not liable for contribution under CERCLA. As for parties which are liable, a contribution claim can be maintained if that party has not resolved its liability with the United States or a State. *United States v. Seymour Recycling Corp.*, 686 F.Supp. 696, 699 (S.D.Ind. 1988).

▪ Determining whether Van Buren can maintain a counterclaim for contribution, then, is a simple matter of figuring whether the plaintiffs are liable under CERCLA and, if so, whether they settled with the United States. First, as noted above, plaintiffs have settlement agreements with the United States (EPA) and those settlements have administrative approval. Second, by virtue of the settlement agreements, the plaintiffs clearly are liable parties under CERCLA—although they have resolved their liability by the settlements. Therefore, the protections of Section 9613(f)(2) apply to them to preclude and preempt actions for contribution.

▪ One of Van Buren's counterclaims is to avoid contribution entirely. That, of course, would be resolved in the course of determining whether any contribution should be paid to plaintiffs by Van Buren. An alternative counterclaim is to limit Van Buren's liability, if any, to its fair share of clean-up costs. That, too, should be resolved in determining the amount, if any, to be contributed to plaintiffs. Nevertheless,

Van Buren's contribution, if any, might exceed its fair share of the clean-up costs, as explained above in *New York v. Exxon Corp.*, 697 F.Supp. 677, 681 n. 5 (S.D.N.Y. 1988).

Even if the contribution exceeds Van Buren's fair share, there are three reasons why that is permissible and fair. First, the statute provides for joint and several liability. 42 U.S.C. § 9607(a). So liability for any part is liability for all, although the paying parties can seek contribution. Van Buren has no right of contribution against plaintiffs, so it only can hope to obtain contribution from other nonsettling parties if it must pay more than its share. Second, Van Buren apparently could have elected to obtain the certainty of a settlement with plaintiffs, but chose instead the uncertainty of litigation. The prospect of a larger contribution for non-settling parties was precisely the incentive intended by Congress to promote early settlements. Third, Van Buren could have settled directly with the federal government, and thereby acquired its own protection from suits for contribution.

In any event, Van Buren's counterclaims for contribution must be dismissed for failure to state a claim upon which relief may be granted.

### (2.) Indemnity

Plaintiffs challenge Van Buren's alternative counterclaim for indemnity by arguing that there is no contractual basis to support such a counterclaim and, without a contract, there can be no indemnity. Van Buren has a dual response. First, Van Buren argues that CERCLA establishes a right to indemnity, particularly in 42 U.S.C. §§ 9607(e) and 9614(b). Second, Van Buren argues that state (Missouri) law provides for noncontractual indemnity in equity.

Section 9607(e) provides, in the entirety:

(1) No indemnification, hold harmless, or similar agreement or conveyance shall be effective to transfer from the owner or operator of any vessel or facility or from any person who may be liable for a release or threat of release under this section, to any other person the liability

imposed under this section. Nothing in this subsection shall bar any agreement to insure, hold harmless, or indemnify a party to such agreement for any liability under this section.

(2) Nothing in this subchapter, including the provisions of paragraph (1) of this subsection, shall bar a cause of action that an owner or operator or any other person subject to liability under this section, or a guarantor, has or would have, by reason of subrogation or otherwise against any person.

In *United States v. Cannons Engineering Corp., supra,* 720 F.Supp. at 1051, the court considered both indemnity and contribution in the context of the CERCLA statute. In that case the settling parties and the non-settling parties all were defendants, so the claims were cross-claims rather than, as here, counterclaims. Aside from the immaterial difference in the parties' relative posture, the facts and issues are remarkably similar to those in this case. That is, it concerned whether the non-settling parties could seek contribution and indemnity from the settling parties. As in this instance, nonsettling parties declined to settle because their hazardous waste generation was *de minimus.* The court discussion, at 720 F.Supp. at 1051:

> The settling defendants argue that the non-settling defendants' cross-claims seeking indemnification should be dismissed because the non-settling defendants have not alleged an express or implied contractual right or any sort of special relationship creating a right to indemnification. The plaintiffs have not taken a position on the dismissal of the indemnity claims.

> Contribution is the method by which a tortfeasor sues a joint tortfeasor for its share of a joint liability to an injured plaintiff. Indemnity is the device by which a tortfeasor "passes through" his entire liability to a third party whom the tortfeasor alleges is the real party responsible for the injury.

*Milai v. Tradewind Industries, Inc.,* 556 F.Supp. 36, 37 (E.D.Mich.1982). Generally, indemnification is based on the existence of a contract or a special relationship between the parties. However, some courts have applied the doctrine to other situations. In such cases:

> The unexpressed premise has been that indemnity should be granted in any factual situation in which, as between the parties themselves, it is just and fair that the indemnitor should bear the total responsibility, rather than to leave it on the indemnitee or to divide it proportionately between the parties by contribution.

*Restatement (Second) of Torts* § 886B comment c (1979). *See Morrissette v. Sears, Roebuck & Company,* 114 N.H. 384, 322 A.2d 7, 9 (1974) ("right to indemnity arises where one is legally required to pay an obligation for which another is primarily liable"); *Fireside Motors v. Nissan Motor Corp.,* 395 Mass. 366, 370, 479 N.E.2d 1386 (1985) (cause of action for indemnity exists "independently of statute, and whether or not contractual relations exist between the parties").

Olin Hunt and Scott Brass [non-settling defendants] argue that equitable indemnity should be imposed in this case because they generated a small amount of the waste at issue and, therefore, their fault is comparatively minor. They argue that precluding indemnification claims would be inconsistent with the intention of Congress that CERCLA not be interpreted so as to affect small generators unfairly.

However, the parties in this case engage in commercial relations pursuant to various contracts, none of which contained an indemnification provision. The court concludes that if any of the parties intended to be protected by indemnification, they should have negotiated mutually acceptable indemnification provisions and included them in their contracts.

In the context of CERCLA, equitable indemnity should not be imposed for additional reasons. First, indemnification acts to relieve a party of liability where a third party is the real party responsible for the injury. *Milai,* 556 F.Supp. at 37. CERCLA imposes strict joint and several

liability on generators. Therefore, *de minimus* generators such as Olin Hunt and Scott Brass may be liable for remediation costs, even if they were not negligent. The only relevant question in determining liability is whether the defendants generated any of the wastes that were deposited at the sites. None of the cross-claiming defendants argue that they did not arrange for waste delivery to at least one of the sites. Thus, in the context of CERCLA, there is no equitable reason to recognize defendants' equitable indemnification claims.

Most importantly, however, implying an equitable right to indemnity in this case would utterly undermine the contribution protection provisions of CERCLA. CERCLA is silent on the indemnity issue. In the absence of any provision expressly addressing indemnity, the court must construe the statute "liberally to avoid frustration of the beneficial legislative purposes." *Dedham Water [Co. v. Cumberland Farms Dairy]*, 805 F.2d [1074] at 1081 [ (1st Cir.1986) ]. As indicated earlier, the contribution protection provisions serve the important function of encouraging early settlements. Failure to provide similar protection against suits for equitable indemnity would encourage defendants to re-cast their contribution claims as indemnity claims and injure, if not destroy, the goals to be served by the express contribution protection provisions of CERCLA. This obviously would be inappropriate.

Accordingly, the non-settling defendants cannot maintain claims for indemnity against any of the settling defendants. Thus, defendants' Motions to Dismiss the Cross–Claims for indemnity will be allowed.

■ As noted above, inferring equitable indemnity would be inconsistent with the letter and intent of CERCLA. Contrary to Van Buren's argument, CERCLA does not establish a right to indemnity. Rather, it merely permits enforcement of an indemnity agreement, but only after precluding an indemnified party from evading original liability. The two sentences in Section 9607(e)(1) can be reconciled in only one way: That is, a liable party remains liable (e.g., to the United States) regardless of whether it has an indemnity agreement, but the liable party still may proceed against a third party (e.g., an insurance company) which has agreed to indemnify the liable party. This interpretation is consistent with the language of the statute, the cases applying it, and the legislative history.

In this instance Van Buren's counterclaims fail to suggest any sort of contract with plaintiffs which would support the claim that they must indemnify Van Buren. Further, no facts are alleged which could support an equitable indemnification. There was no special relationship between Van Buren and plaintiffs by which plaintiffs undertook to indemnify, or by which they should be held to indemnify. As discussed in *Cannons*, quoted above, even if Van Buren's generation of hazardous waste was small by comparison to plaintiffs, Van Buren still would remain strictly liable under CERCLA. If Van Buren has any liability, that liability cannot be shifted back to plaintiffs without some specifically identifiable agreement to do so.

Also as noted in *Cannons*, if some sort of equitable indemnity were recognized, it would undermine the intent and purpose of CERCLA. The contribution protection would be useless if contribution claims could be re-cast as equitable indemnity claims. The legislative history, intent, purpose and text of CERCLA compel a conclusion that equitable, i.e., non-contractual, indemnity cannot be applied here.

Finally, Van Buren's reliance upon Section 9614(b) is misplaced. The statute precludes any person from receiving compensation for removal costs under both CERCLA and some other federal or state program. This lawsuit concerns compensation under CERCLA alone. There is no indication that anyone has acquired, or attempted to acquire, compensation from any program other than CERCLA, so Section 9614(b) has no application here.

One case finding rights of contribution and indemnity can be distinguished easily.

**1508**

In *United States v. Moore*, 703 F.Supp. 455 18 E.L.R. 21274 (E.D.Va.1988). In that instance two agencies of the United States reached a settlement which they contended would preclude any rights of contribution for defendants. The court held that such a settlement, by separate agencies within the same federal government, was not the type intended to protect against contribution claims. The defendants' indemnity claim arose from contracts with a government agency for work which allegedly caused, or contributed to, the hazard. The court found that the defendants should be permitted to seek indemnity from that agency for breaches of contract, warranties and environmental laws.

On the basis of all the foregoing, the counterclaims for indemnity must be dismissed. Absent counterclaims for contribution and indemnity, which will be dismissed here, the defendants apparently have no independent basis for claiming litigation costs, including attorneys' fees. Therefore, the counterclaims for those costs also must be dismissed.

### 3. Second Motion to Dismiss Defendant Broome's Counterclaims

Plaintiffs' second motion to dismiss, filed December 12, 1989, was directed at the counterclaims filed by Broome on November 22, 1989. Broome filed suggestions in opposition on December 22, 1989. The suggestions were, in the alternative, designated as a motion to strike plaintiffs' motion to dismiss. Plaintiffs filed supplemental suggestions in support of the motion to dismiss January 16, 1989. The joint reply filed by defendants Van Buren and Broome on January 25, 1990, also applied to this motion to dismiss Broome's November 22, 1989, counterclaims.

The arguments, applicable law, and facts relating to the motion to dismiss Van Buren's claims were virtually identical. If there are any differences, they are too insignificant to merit separate discussion. For the reasons set forth above, regarding the motion to dismiss Van Buren's counterclaims, the motion to dismiss Broome's counterclaims will be granted.

### 4. Broome's Motion to Strike

As mentioned above, defendant Broome's motion, filed December 22, 1989, to strike plaintiffs' motion to dismiss Broome's November 22, 1989, counterclaims was an alternative to its suggestions in opposition to the motion to dismiss. Plaintiffs filed suggestions in opposition January 4, 1990.

■ Essentially Broome argues that the motion to dismiss was redundant because it repeated what had been contained in the first motion to dismiss, which plaintiffs had filed November 3, 1989. Broome seeks an order striking the second motion to dismiss, and its litigation costs relating to the motion to dismiss.

The obvious answer here is that the motion to dismiss was directed toward Broome's new answer and counterclaims. That new answer, in turn, apparently was filed in response to plaintiffs' amended complaint. The amended complaint was essentially the same as the original, containing only minor changes. So, not surprisingly, the answer was essentially the same as the first answer. There should be, therefore, no surprise that the motion to dismiss a new answer and counterclaims would be the same as the prior motion to dismiss. There is no indication of intent to harass or abuse Broome. The motion to strike will be denied.

### 5. Motion to Dismiss Cities' Counterclaims

Plaintiffs filed a motion January 10, 1990, to dismiss counterclaims of the Mississippi cities of Kosciusko, Canton, and Clarksdale ("the Cities"). The Cities filed their opposition January 22, 1990. Plaintiffs replied February 5, 1990.

■ The counterclaim seeks a declaratory judgment that, essentially, plaintiffs' settlement demands were unreasonable and unlawful such that the Cities should be awarded their litigation costs for defending this lawsuit. Plaintiffs contend that they were not required to make any sort of settlement offer, and that they are entitled to maintain this lawsuit, so the counter-

claim must be dismissed. The Cities argue that the settlement demands were unreasonable, the demands sought more than plaintiffs were entitled to receive, that the cities were precluded by state (Mississippi) law from accepting the offers, and that therefore they should recover litigation costs.

This matter can be resolved simply enough. CERCLA makes clear that plaintiffs can seek contribution. By way of this lawsuit, plaintiffs are doing just that. If plaintiffs offered or demanded settlement, in lieu of litigation, that is plaintiffs' choice but not its obligation. If the Cities will not or cannot accept the offers or demands, the plaintiffs still may proceed with a claim for contribution. If the offer of settlement is too burdensome or outrageous, the Cities need to do no more than reject it. If it would require the Cities to do something which local law prohibits, the Cities simply would reject it. If the Cities merely do not like the offer or demand, or the way it is presented, or the people presenting it, the Cities simply would reject it.

None of that divests the plaintiffs of a right to claim contribution. Even if they had made no offers or demands whatsoever, they still could seek contribution. If plaintiffs elect to sue the Cities (as they have), the Cities still would be in the position of defending the suit—as they are now.

Certainly the Cities had alternatives to defending this lawsuit. They might have made a counter-offer which accommodated the practical and legal restrictions on the Cities. They might have tried to settle directly with the government and, thereby, obtained protection from contribution claims.[5] They might have sought to participate in the original settlement negotiations with EPA (if they had been notified they were potentially responsible parties), and thereby tried to promote terms favorable to the Cities. Yet, they apparently elected to risk being sued for claims of contribution, with the attendant expenses, rather than choosing another option.

If the plaintiffs' demands were unreasonable, then the Cities may have been left with no real choice between accepting unreasonable demands or defending a lawsuit. That choice, however, is no different than if plaintiffs had made no offer at all, and simply filed their claims for contribution. There is no stretch of the imagination which would permit the Cities to transform an unacceptable settlement offer into a viable counterclaim which could support an award for litigation costs. The consequences of recognizing such a claim would be staggering. If declined offers suddenly could be converted into a cognizable claim of bad faith, settlement offers would cease. Conceivably there would be no way to resolve disputes without dragging them to final judgment.

The Cities have cited no law or facts which require settlement offers to be made to them in a form which they are willing and able to accept. Furthermore, the law does not provide for a declaration that the Cities are not liable for more than an equitable share. Indeed, CERCLA provides for contribution for plaintiffs and, if the cities must contribute more than an equitable share, they may exercise their right to contribution from other potentially liable parties. They have not stated a claim under which any set of facts could entitle them to relief.

The counterclaim for a declaration that the cities are not liable for excess interest costs is unnecessary. It seeks a declaration that the cities are not liable under CERCLA for any interest amount more than CERCLA would hold them liable. Such a counterclaim is a nullity. The cities can be certain that the court will not find them to be liable for any more interest under CERCLA than the statute permits. Of course, they remain free to challenge (and no doubt would challenge) any finding if they believe it to be outside the range of CERCLA.

Without a predicate counterclaim, the cities have no basis for recovering litigation

---

5. Indeed, if the Cities are potentially liable parties and have not settled with the government, they conceivably still could be subject to claims under 42 U.S.C. § 9622(c)(2).

costs and attorneys' fees. Accordingly, the motion to dismiss must be granted.

### 6. Motion to Dismiss Three Defendants

██ Plaintiffs filed a motion January 10, 1990, to dismiss with prejudice defendants Rock Port Board of Public Works, Fargo Public Schools, and Fred Hawn d/b/a Hawn's Auto Body, pursuant to a settlement agreement. The court finds that the terms and conditions of the settlement agreements entered by plaintiffs and these three settling defendants were negotiated in good faith and were entered under terms that are reasonable and just. All claims by plaintiffs against these three defendants will be dismissed with prejudice according to the terms of the settlement. Furthermore, all claims which have been asserted, or may be asserted, against these three defendants for matters addressed in the settlement agreements are barred, pursuant to 42 U.S.C. § 9613(f), the terms and conditions of the settlement agreements, and the Administrative Order on Consent (Docket No. 87–F–0007) issued on October 29, 1987. The parties to the settlement agreements will bear their own costs.

### 7. Notice of Voluntary Dismissal

Plaintiffs filed a notice January 10, 1990, of voluntary dismissal without prejudice defendants Krafcor Corporation, Substation Testing Service, Inc., Master Maintenance and Towing Co., and Transcycle Industries, Inc., for failure to locate to serve process. No answer or motion for summary judgment has been filed by any of these defendants. Pursuant to Rule 41(a)(1), Fed.R.Civ.P., the claims against those defendants will be dismissed without prejudice.

### III. Conclusion

The most significant issues in these motions are whether the counterclaims for contribution, noncontractual indemnity and unlawful demands can be permitted. As discussed here, the plaintiffs, as settling parties, are protected by the provisions of CERCLA from the counterclaims for con-tribution. Further, there has been no basis in law or fact set forth to support claims of noncontractual indemnity. Finally, the nature of the demands presented by plaintiffs for settlement cannot give rise to cognizable counterclaims. Defendants who do not wish to settle on the terms presented to them are left only with the opportunity to defend the litigation. It is

ORDERED that plaintiffs' motion, filed November 3, 1989, to dismiss counterclaims filed by defendant Broome County, New York on October 16, 1989, is denied as moot. It is further

ORDERED that plaintiffs' motion, filed December 12, 1989, to dismiss counterclaims filed by defendant Van Buren Light & Power District on November 22, 1989, is granted. It is further

ORDERED that Van Buren Light & Power District's counterclaims are dismissed with prejudice. It is further

ORDERED that plaintiffs' motion, filed December 12, 1989, to dismiss counterclaims filed by defendant Broome County on November 22, 1989, is granted. It is further

ORDERED that defendant Broome County's counterclaims are dismissed with prejudice.

ORDERED that defendant Broome's motion, filed December 22, 1989, to strike plaintiffs' motion, filed December 12, 1989, is denied. It is further

ORDERED that plaintiffs' motion, filed January 10, 1990, to dismiss counterclaims filed December 11, 1989, by the Mississippi cities of Kosciusko, Canton, and Clarksdale is granted. It is further

ORDERED that the counterclaims filed December 11, 1989, by the defendant Mississippi cities of Kosciusko, Canton, and Clarksdale are dismissed with prejudice. It is further

ORDERED that plaintiffs' motion, filed January 10, 1990, to dismiss with prejudice defendants Rock Port Board of Public Works, Fargo Public Schools, and Fred Hawn d/b/a Hawn's Auto Body, pursuant to a settlement agreement is granted. It is further

ORDERED that the claims against defendants Rock Port Board of Public Works, Fargo Public Schools, and Fred Hawn d/b/a Hawn's Auto Body, are dismissed with prejudice, and those parties shall bear their own costs. It is further

ORDERED pursuant to plaintiffs' notice, filed January 10, 1990, of voluntary dismissal, their claims against defendants Krafcor Corporation, Substation Testing Service, Inc., Master Maintenance and Towing Co., and Transcycle Industries, Inc., are dismissed without prejudice.