AVNET, INC., et al., Plaintiffs,

v.

**ALLIED–SIGNAL, INC.**
**et al., Defendants.**

Civ. A. No. 91–0383B.

United States District Court,
D. Rhode Island.

Oct. 30, 1992.

William F. McMahon, William S. Eggeling, Providence, RI, Timothy J. Hinckle, for plaintiffs.

Deming E. Sherman, Gregory L. Benik, Gerald J. Petros, Nicholas Gorham, Providence, RI, Fred Kelly, Jr., Boston, MA, Leo J. Dailey, Coventry, RI, Scott J. Jordan, Washington, DC, Louis V. Jackvony, III, Lincoln, RI, for defendants.

1. Three defendants, Allied–Signal, Inc., Brown & Sharpe Mfg. Co. and W.R. Grace & Co.—Conn., (the "Allied Group"), move for FRCP 12(b)(6) dismissal because, they argue, the plaintiffs have failed to state a claim upon which relief can be granted. The majority of the defendants have moved for summary judgment, therefore, their motions are the focus of this report. The final determination, however, applies to all settling defendants.

2. The defendants who have moved for summary judgment (collectively, the "Moving Defendants") have segregated themselves into three groups:

The "Amtel Group": Amtel, Inc., Hoescht Celanese Corp., Microfibres, Inc., Original Bradford Soap Works, Inc., Rau Fastener, Inc., Scott Brass, Inc., Victor Wire & Cable Corp., and Wickes Manufacturing Company.

## ORDER

FRANCIS J. BOYLE, Chief Judge.

This matter was heard on October 19, 1992, on Plaintiffs' objection to the Report and Recommendation of Magistrate Judge Boudewyns dated August 12, 1992, which recommended that summary judgment be entered against the Plaintiffs. After hearing thereon and upon consideration of the memoranda of the parties and the Report and Recommendation, it is hereby ORDERED:

1. The Report and Recommendation (attached hereto as *Appendix A*) is adopted and summary judgment is granted against Plaintiffs in favor of the Defendants listed in *Appendix B*.

2. With respect to the recommendation in the Report and Recommendation that this Court impose Rule 11 sanctions on the Plaintiffs, the Court finds that sanctions are not warranted.

## REPORT AND RECOMMENDATION

TIMOTHY M. BOUDEWYNS, United States Magistrate Judge.

This matter is before the Court for review of the defendants' motions pursuant to Federal Rule of Civil Procedure (FRCP) 56 for summary judgment.[1] The defendants have moved for summary judgment because, they argue, there are no material facts in dispute and they are entitled to judgment as a matter of law.[2] This matter has been referred to me for preliminary review, findings and rec-

The "Amtrol Group": Amtrol, Inc., Arkwright, Inc., Arlon, Inc., A.T. Cross Co., Blount Marine Corp., Blount Seafood Corp., Crystal Brands, Inc./Trifari, Davol, Inc., EG & G Sealol, Inc., Exeter Packaging Group, Inc., G.M. Gannon, Inc., General Signal Corp., Glas–Kraft, Inc., Hasbro, Inc., Irex Corp. (AC & S), Kenney Manufacturing Co., Lable Craft, Inc., Mack Trucks, Inc., Monarch Industries, Inc., Murdock Webbing Company, Inc., Neptco Inc., Northern Telecom, Inc., Quebecor Printing Providence, Inc., Rhode Island Board of Governors for Higher Education, Richton Corocraft, Sprague Energy Corp., Tillotson–Pearson, Inc., Touraine Paints, Inc., Union Camp Corp., W.M. Bloom & Son, Inc., Whitman Skivertex, Ltd.

The "United States": the United States of America for "federal defendants": the United States Navy, the United States Coast Guard and the General Services Administration.

ommended disposition.[3]

*Procedural history*

In September 1983, the United States Environmental Protection Agency (the "EPA") placed the Landfill and Resource Recovery landfill site (the ·"Site") located in North Smithfield, Rhode Island on its National Priorities List of . most hazardous sites. The EPA determined that both the plaintiffs and the defendants in this case were potentially responsible parties ("PRPs") due to their disposal of hazardous substances at the Site.

After negotiations with the EPA, on February 26, 1991, the majority of the defendants signed the Administrative Order by Consent ("AOC") which represents the settlement they reached with the EPA. The plaintiffs have not settled with the EPA, which has, because of this, ordered them to conduct the cleanup at the site under. a Unilateral Administrative Order ("UAO").[4]

On August 2, 1991, the plaintiffs filed suit against forty-eight defendants[5] pursuant to the Comprehensive Environmental Response, Compensation, and Liability Act ("CERCLA")[6]. On December 30, 1991, the plaintiffs filed against four . additional defendants,[7] the Allied Group, also under CERCLA. The two cases were consolidated. On February 14, 1992, the plaintiffs amended their first Complaint, seeking, among other things, to recover "all costs of response incurred by plaintiffs . . . including interest, and associated costs and fees."[8]

For the following· reasons I recommend that summary judgment be entered against the plaintiffs.

*Facts of the case*

The EPA placed the landfill Site in question on its National Priorities List in September 1983 because it determined that a release or threat of release of hazardous substances occurred at or from the Site. The EPA also concluded that both the plaintiffs· and the defendants in this case disposed of hazardous wastes at the Site, thus, making all of them responsible for clean up.

On September 29, 1988, the EPA issued a Record of Decision stipulating a remedy for clean-up of the Site. The EPA calculated the volume of hazardous material each PRP allegedly sent to the Site, using information provided by the PRPs and the State of Rhode Island. According to the EPA, the defendants in this suit are the *"de minimis"* parties because each contributed less than 1% of the total volume of hazardous substances at the Site. The EPA has determined that the plaintiffs (and those they claim to represent—Truk–Away of Rhode Island, Inc., Landfill & Resource Recovery, Inc. David J. Wilson and Charles S. Wilson— collectively referred to as the "Truk–Away Group") have· contributed over 87% of the hazardous waste at the Site. ·

After lengthy negotiations, the majority of the defendants signed the AOC, on February 26, 1991, which consists of the settlement they reached with the EPA.[9] Each of the· *de minimis* settlors agreed to pay into the EPA Superfund an amount equal to their fair share of the past and estimated future response costs for the Site plus an additional 56% as a settlement premium.

---

3. 28 U.S.C. § 636(b)(1)(B); *Mathews v. Weber,* 423 U.S. 261, 96 S.Ct. 549, 46 L.Ed.2d 483 (1976).

4. Issued pursuant to Section 106 of CERCLA. 42 U.S.C. § 9606.

5. Eight defendants are represented by the Amtel Group, ·thirty-one by the Amtrol Group and one by the United States.

Eight defendants did not settle with the EPA. The recommendation in this report applies *only* · to the settling defendants.

6. 42 U.S.C. §§ 9601 *et seq.*

7. One of these four, Carroll Products, Inc., has not responded to the plaintiffs' Complaint. According to the Appendices in the AOC, however, Carroll Products is a settling party, therefore, the recommendation in this report does apply to this defendant.

8. *See* Amended Complaint ¶ 60.

9. An AOC becomes final through the administrative process, unlike ·a Consent Decree which requires court approval.

Although the *de minimis* settlors[10] contributed only 10.56% of the waste at the Site, they are paying 16% of the total anticipated response costs at the Site, which totals nearly three million dollars. The EPA has ordered the plaintiffs, who have not settled, to conduct the cleanup at the site under a UAO.

In early August 1991, the plaintiffs filed their original complaint against the first forty-eight defendants pursuant to CERCLA.

On September 3, 1991, the EPA published the AOC in the Federal Register[11] in order to begin the 30–day public notice and comment period required by EPA regulations. Only the plaintiffs and the Truk–Away Group submitted comments on the proposed settlement. The EPA weighed these comments and concluded that no modification of the *de minimis* settlement was necessary. The AOC became final on January 30, 1992.

The AOC includes a provision protecting the settling parties from actions for contribution:

> The United States agrees that by entering into and carrying out the terms of this Consent Order, each Settling Party will have resolved its liability for Covered Matters to EPA ... within the meaning of Sections 113(f)(2) and 122(g)(5) of CERCLA ... The Settling Parties and Federal Settling Parties shall be entitled to the protections from actions for contribution afforded by those provisions and shall not be liable for claims of contribution afforded by those provisions and shall not be liable for claims for contribution for Covered Matters, as provided by Sections 113(f)(2) and 122(g)(5) of CERCLA.[12]

The defendants argue that precisely because of this protection the plaintiffs cannot sue them for response costs incurred at the Site.

On December 30, 1991, the plaintiffs filed suit against four additional defendants. This second suit (CA–91–0690B) and the plaintiffs' first suit were fundamentally the same, therefore, the two were consolidated to CA–91–0383B.

On February 14, 1992, the plaintiffs filed an Amended Complaint, seeking, among other things, to recover "all costs of response incurred by plaintiffs ... including interest, and associated costs and fees."[13]

*Issues*

Are any or all of the defendants entitled to summary judgment? And, if so, are the federal settling defendants entitled to judgment the same as the rest of the settling defendants?

*Discussion*

■ The defendants' motions for summary judgment are made pursuant to FRCP 56(c), which states:

> The judgement sought shall be rendered forthwith if the pleadings, depositions, answers or interrogatories, and admissions of file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgement as a matter of law.

Summary judgment is appropriate then when "there is no genuine issue as to any material fact and ... the moving party is entitled to judgement as a matter of law."[14] Once the movant avers "an absence of evidence to support the non-moving party's case,"[15] the latter must adduce specific facts establishing the existence of at least one issue that is both "genuine" and "material." The mere existence of a factual dispute, of course, is not enough to defeat summary judgment. The evidence relied upon must be "significantly probative" of specific facts,[16] and "material"

---

**10.** As mentioned *supra,* not all of the eligible *de minimis* parties chose to settle with the EPA. Thus, while the volumetric share of all the *de minimis* parties is 12.98%, the volumetric share of the settling *de minimis* parties is 10.56%.

**11.** 56 Federal Register 43,598 (September 3, 1991).

**12.** *See* AOC at 9.

**13.** *See* Amended Complaint ¶ 60.

**14.** Fed.Rule Civ.P. 56(c).

**15.** *Celotex Corp. v. Catrett,* 477 U.S. 317, 325, 106 S.Ct. 2548, 2553, 91 L.Ed.2d 265 (1986).

**16.** *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 249–50, 106 S.Ct. 2505, 2510–11, 91 L.Ed.2d 202 (1986).

in the sense that the dispute over them necessarily "affect[s] the outcome of the suit." [17] In other words, the party opposing summary judgment must demonstrate that there are bona fide factual issues which "need to be resolved before the related legal issues can be decided." [18] The First Circuit has concluded that an issue is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." [19]

The court's function in ruling on a motion for summary judgment is to determine whether or not such a genuine issue exists, and not to resolve such existing factual issues. [20]

First, the plaintiffs here do not dispute the material facts for this motion. [21] Second, the plaintiffs' claim is statutorily barred and the settling defendants are entitled to judgment as a matter of law.

■ Congress enacted CERCLA in 1980 in response to the severe environmental and public health damage caused by the disposal of hazardous substances. The statute's chief purpose is the expedient cleanup of hazardous waste contaminated sites. [22]

CERCLA empowers the EPA to respond to actual and threatened releases of "any hazardous substance" and "any pollutant or contaminant which may present an imminent and substantial danger to the public health or welfare." [23] When the EPA determines that response action is needed at a contaminated site, the statute provides several alternatives: first, the EPA may issue an administrative order directing the responsible parties to respond to the contamination; [24] second, the EPA may petition the district court for an injunction to compel the responsible parties to take steps to lessen an actual release of hazardous substances or to prevent a threatened release; [25] third, the EPA may use its own resources to respond to the contamination, and then sue the responsible parties for reimbursement of the Superfund. [26]

■ Response costs [27] can be incurred by the EPA, individual states or by private parties, depending on who pays for the removal or remedial activities. [28] CERCLA's Section 107(a) provides for recovery of response costs from PRPs in several distinct types of actions: the federal government, state gov-

---

17. *Id.* at 248, 106 S.Ct. at 2510.

18. *Mack v. Great Atlantic and Pacific Tea Co.*, 871 F.2d 179, 181 (1st Cir.1989).

19. *Oliver v. Digital Equip. Corp.*, 846 F.2d 103, 105 (1st Cir.1988) (quoting *Anderson*, 477 U.S. at 248, 106 S.Ct. at 2510).

20. *United States v. Diebold, Inc.*, 369 U.S. 654, 82 S.Ct. 993, 8 L.Ed.2d 176 (1962); *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 90 S.Ct. 1598, 26 L.Ed.2d 142 (1970), *Anderson*, U.S. at 248, 106 S.Ct. at 2510; *Local No. 48, United Brotherhood of Carpenters & Joiners v. United Brotherhood of Carpenters & Joiners*, 920 F.2d 1047, 1050 (1st Cir.1990); *Garside v. Osco Drug, Inc.*, 895 F.2d 46, 48 (1st Cir.1990).

21. The plaintiffs dispute the EPA's settlement process in general and the AOC as it specifically applies to the *de minimis* parties. The plaintiffs allege that the AOC is unfair and unreasonable, among other reasons, because of inaccurate calculations of each settling PRPs' volumetric share of hazardous substances disposed of at the Site.
 The issues of whether the EPA's settlement procedures and the AOC are unfair or collusive are not properly before this Court, however, and, thus, are not considered in this report.

22. *Dedham Water Co. v. Cumberland Farms Dairy, Inc.*, 805 F.2d 1074, 1081 (1st Cir.1986); *Voluntary Purchasing Groups, Inc. v. Reilly*, 889 F.2d 1380, 1386 (5th Cir.1989).

23. 42 U.S.C. § 9604(a). CERCLA vests this authority in the President, 42 U.S.C. § 9604, who delegated primary authority to the EPA Administrator in Executive Order 12580 (January 23, 1987).

24. 42 U.S.C. § 9606.

25. *Id.*

26. 42 U.S.C. §§ 9604, 9607. *See, e.g., United States v. Rohm & Haas Co.*, 669 F.Supp. 672, 674 (D.N.J.1987). The EPA can elect to use one or a combination of these options. In this case, the EPA did some of the work on its own and then ordered the PRPs to complete the cleanup under CERCLA Section 106.

27. The term "response costs" does not appear in CERCLA. The term "response" means "removal" and "remedial action," terms which are lengthily defined in the statute. *See* 42 U.S.C. § 9601(23–25).

28. 42 U.S.C. §§ 9607(a) and 9601(23–25).

ernment (or Indian tribe) and the private party response recovery actions.[29]

The private party response recovery action, set forth in Section 107(a)(4)(B), provides that:

> Notwithstanding any other provision or rule of law, and subject only to the defenses set forth in subsection (b) of this section—[owners, operators, generators and transporters] shall be liable for—(B) any other necessary costs of response incurred by any other person consistent with the national contingency plan.[30]

If a private party cleans up a site, it may incur response costs and obtain the right to recover these costs from others.

■ Prior to the addition of Section 113(f) to CERCLA in 1986, the right of contribution (the right of *liable* parties to sue each other under Section 107) had not been explicitly provided. Many courts had found the right of contribution to be implied under Section 107's phrase "any other person".[31] Congress added Section 113(f) to clarify and confirm liable parties' rights to use Section 107 to seek contribution from each other for response costs.[32] Thus, with Section 113, Congress did not add a new cause of action, but showed that it was only affirming and making clear an existing cause of action for contribution under Section 107. Congress did not demonstrate in any way in the statute

or in the legislative history that Section 113(f) was intended to be an independent, alternative cause of action distinct from the Section 107 cost recovery action.[33] Accordingly, there is no basis for the plaintiffs' attempt to distinguish between a cause of action under Section 107 and one under Section 113.

## Contribution Protection

. In general, CERCLA seeks to encourage the EPA to enter into settlements in order to hasten cleanup and reduce litigation.[34] CERCLA's *de minimis* settlement provision[35] specifically serves to encourage early settlements in appropriate circumstances.[36] The *de minimis* settlement provision instructs the EPA to enter into an "expedited final settlement" with responsible parties as quickly as possible whenever the EPA has concluded that: (1) the settlement is "practicable and in the public interest"; (2) the settlement consist of only a small part of the total response costs at the site and (3) the waste contributed by the settling party is minor in comparison to other hazardous substances at the facility, both in terms of amount and toxicity.[37]

■ CERCLA provides protection to settling parties via two specific provisions. First, CERCLA Section 113(f)(2) states, in pertinent part:

---

**29.** 42 U.S.C. § 9607(a)(4)(A); 42 U.S.C. § 9607(a)(4)(B).

**30.** 42 U.S.C. § 9607(a)(4)(B); *see also Cadillac Fairview/California, Inc. v. Dow Chemical Co.,* 840 F.2d 691, 693 (9th Cir.1988) (CERCLA Section 107 authorizes a private right of action for the recovery of response costs); *United States v. New Castle County,* 642 F.Supp. 1258, 1261–62 (D.Del.1986) (same) (citing cases).

**31.** *See, e.g., New Castle County,* 642 F.Supp. at 1269; *Colorado v. ASARCO, Inc.,* 608 F.Supp. 1484, 1490 (D.Colo.1985); *Jones v. Inmont Corp.,* 584 F.Supp. 1425, 1428 (S.D.Ohio 1984).

**32.** *See* House Judiciary Committee "Explanation of Purpose and Intent [of Section 113 of H.R. 2817]", 131 CONG.REC. 34645 (Section .113 "clarifies the availability of judicial review regarding contribution claims and settlements"); S.Rep. No. 99–11, 99th Cong., 1st Sess. 42 (1985) (the bill "clarifies and confirms existing law" by adding a contribution provision); 131 CONG. REC. 24450 (statement of Sen. Stafford, the

sponsor of S.51) (amendment of the statute would "remove any doubt as to the right of contribution ... despite several recent district court cases correctly confirming that we intended the law to confer such a right"). H.R. 2817 and S.51 were the House and Senate bills, respectively, that were reconciled by a Conference Committee of the House and Senate and ultimately became the Superfund Amendments and Reauthorization Act ("SARA").

**33.** *See County Line Invest. Co. v. Tinney,* 933 F.2d 1508, 1516–17 (10th Cir.1991).

**34.** 42 U.S.C. § 9622(a).

**35.** As set forth in § 122(g), 42 U.S.C. § 9622(g), which was added by SARA in 1986.

**36.** *See, e.g., United States v. Cannons Engineering Corp.,* 899 F.2d 79, 92 (1st Cir.1990).

**37.** 42 U.S.C. § 9622(g)(1)(A).

A person who has resolved its liability to the United States or a State in an administrative or judicially approved settlement shall not be liable for claims for contribution regarding matters addressed in the settlement.[38]

Second, CERCLA Section 122(g)(5), addressing *de minimis* settlements, maintains:

A party who has resolved its liability to the United States under this subsection shall not be liable for claims for contribution regarding matters addressed in the settlement.[39]

A suit by one PRP against another to obtain reimbursement is a claim for contribution and is barred by the contribution protection provisions of CERCLA if the defendant PRP has resolved its liability in a settlement with EPA.[40]

These CERCLA provisions are meant to encourage settlements and to provide settling parties with "a measure of finality in return for their willingness to settle."[41] Contribution protection is a vital part of a *de minimis* settlement because the legal fees and other costs of negotiating and litigating with the United States, compounded by the potential costs of defending against actions for contribution by other PRPs, could often surpass the amount such minimal contributors would be responsible for paying. As a result, CERCLA provides *de minimis* PRPs with the capacity to pay an amount proportionate to their responsibility at a site and allows them to be discharged from further negotiations and litigation with a minimum expenditure of energy, time, and resources.

Congress intended that this result favor settling parties over nonsettling parties.[42]

*Contribution Claims Are Clearly Barred by CERCLA*

A claim for contribution is a claim in which one liable party seeks to recover from another liable party for the latter party's share of a common liability.[43] Under CERCLA, when one PRP sues another to recover a share of the response costs incurred by the first, that suit is a claim for contribution.[44]

■ Contribution claims against the *de minimis* settlors are strictly prohibited by the plain language of the contribution protection provisions of CERCLA as discussed above.

Congress enacted sections 113(f)(2) and 122(g)(5) for the purpose of encouraging settlement.[45] CERCLA's goals are furthered when the EPA is able to focus its resources on cleaning up sites rather than litigating with PRPs. To achieve this end, Congress gave the EPA a "carrot and stick" to obtain settlements.[46] The EPA can offer the "carrot" of allowing settlors to pay once and then be protected from having to pay another time to a non-settlor. The "stick" that EPA wields against non-settlors is the risk that the settlors' payment will be less than the settlors' relative share of the total costs at the site and that the non-settlors will have to make up the difference.[47]

*Is the Plaintiffs' Claim a Claim For Contribution?*

Plaintiffs claim that there are fundamental differences between response costs recovery and contribution actions within CERCLA

---

**38.** 42 U.S.C. § 9613(f)(2).

**39.** 42 U.S.C. § 9622(g)(5).

**40.** 42 U.S.C. §§ 9613(f)(2) and 9622(g)(5).

**41.** *Cannons Engineering*, 899 F.2d at 92 (*citing* H.R.Rep. No. 99–253, Part I, 90th Cong., 1st Sess. 80 (1985), U.S.C.C.A.N.1986, 2835, 2862 (legislative history of CERCLA)).

**42.** *Id.*

**43.** *See, e.g. Northwest Airlines, Inc. v. Transport Workers Union*, 451 U.S. 77, 87–88, 101 S.Ct. 1571, 1578–79, 67 L.Ed.2d 750 (1981); *In re "Agent Orange" Product Liability Litigation*, 818

F.2d 204, 207 (2d Cir.1987); *Rowe v. John C. Motter Printing Press Co.*, 273 F.Supp. 363, 365 (D.R.I.1967) (Day, C.J.) (discussing contribution in context of Uniform Contribution Among Joint Tortfeasors Act). *See also* Restatement (Second) of Torts § 886A (1979); Black's Law Dictionary 328 (6th ed. 1990).

**44.** *Amoco Oil Co. v. Borden, Inc.*, 889 F.2d 664, 672 (5th Cir.1989).

**45.** *See Cannons Engineering*, 899 F.2d at 92.

**46.** *In re Acushnet River & New Bedford Harbor*, 712 F.Supp. 1019, 1027 (D.Mass.1989).

**47.** *Id.*

and, thus, base their claim solely on Section 107. As discussed above, however, plaintiffs' claim must be based on both Sections 107 and 113(f).

The plaintiff PRPs have sued other PRPs (including the *de minimis* settlors) seeking to recover a portion of the response costs that the plaintiffs claim they will bear in cleaning up the Site. Plaintiffs will incur response costs only as a result of work that they are compelled to do under the EPA's UAO.

While it may be true that the plaintiffs' claim is an action for response costs, it is a claim for *contribution* from the defendants for response costs. It is clear from the analysis of CERCLA and the history behind it that the plaintiffs' claim, whatever it's called, is one for contribution.

Case law also supports this conclusion. In *United States v. Cannons Engineering Corp.*,[48] the United States and the states of New Hampshire and Massachusetts brought an action against non-settling PRPs seeking previously incurred clean-up costs. The plaintiffs also moved for entry of a consent decree with contribution protections for settling PRPs. Non-settling defendants brought cross-claims for contribution and implied indemnity. The First Circuit determined that Congress specifically provided that contribution actions could not be maintained against settlors.[49]

As in *Cannons*, in this case, non-settling PRPs are suing those PRPs who have settled with the EPA for causing hazardous contamination at a waste disposal site. The settling defendants here, like those in *Cannons*, are entitled to contribution protection under CERCLA from any non-settlor's claims of liability which attempt to circumvent Congress' *obvious* intent to protect settlors.

A recent case, *United States v. Alexander*,[50] so held that *de minimis* PRPs who

settled their CERCLA liability to the Government are protected from contribution and indemnity claims. In *Alexander*, some *de minimis* PRPs reached a settlement with the Government and paid money in exchange for guaranties that they would not be subject to further liability at the site. One of the non-settling PRPs filed an action against the settlors seeking contribution under federal and state law. The court found that under Sections 113 and 122 of CERCLA, contribution claims against *de minimis* settlors were prohibited as a matter of law. In so holding, the *Alexander* court stated:

> The parties in the instant case are all subject to CERCLA and have resolved any liability thereunder by joining in the Partial Consent Decree. It is this exact scenario that Congress had in mind when it decided to protect these parties from any further liability, including claims for contribution or indemnity. Therefore, it is clear that [the non-settlors] cannot reach them for *any* type of contribution.[51]

As well, the non-settling PRPs in this case cannot reach the *de minimis* PRPs for any type of contribution, including contribution for response costs.

On July 31, 1992, Judge Harold Ackerman of the United States District Court for the District of New Jersey issued his opinion in *Transtech Industries, Inc. v. A & Z Septic Clean, et al.*[52] In *Transtech Industries*, non-settling plaintiffs brought a CERCLA Section 107 action against over two hundred settling defendants, among others, seeking reimbursement for their EPA ordered clean-up activities at a contaminated waste disposal site. The settling defendants argued that the consent decree they entered into with the EPA protected them from suits for contribution.

Judge Ackerman rejected the plaintiff's argument that Section 107 response actions

**48.** 899 F.2d 79 (1st Cir.1990) (Selya, J.).

**49.** In addition, the court determined that non-settling PRPs could not "make an end run around the statutory scheme" with its claim for indemnification. *Id.* at 92. Because CERCLA was silent regarding indemnification, the *Cannons Engineering* court held that indemnification

was embraced within the contribution protection provision of Section 113(f)(2). *Id.* at 92.

**50.** 771 F.Supp. 830 (S.D.Tex.1991).

**51.** *Id.* at 833 (emphasis added).

**52.** 798 F.Supp. 1079 (D.N.J.1992).

and Section 113 contribution actions are distinct; "when properly construed, the two sections work together, one governing liability and the other governing contribution from those found liable."[53] Thus, the plaintiff failed in its argument that "since its claim is authorized under Section 107, it is not subject to a Section 113(f)(2) defense."[54] Judge Ackerman also noted:

> ... even if I accepted plaintiff's distinction between response costs and contribution costs, I find that plaintiffs are being facetious at best in their argument that it acted voluntarily, privately, and in keeping with the goals of CERCLA and not as a result of government threats.[55]

Although, the defendants were not afforded contribution protection for all site costs,[56] Judge Ackerman's analysis of Sections 107 and 113 of CERCLA are on point for the instant case. The plaintiffs here, too, fail in their argument that a Section 107 claim is distinct from a Section 113(f)(1) contribution claim. In addition, even if the plaintiffs' arguments were accepted, clearly, they have not acted "voluntarily, privately and in keeping with the goals of CERCLA and not as a result of government threats."[57]

In *Key Tronic Corporation v. United States*[58], according to the plaintiffs, the court asked, "whether the contribution protection provided a settling PRP by 42 U.S.C. § 9622(g)(5) bars a direct action by another PRP under 42 U.S.C. § 9607(a)(4)(B) to recover initial response costs privately incurred."[59] The *Key Tronic* court distinguished the *United States v. Cannons Engineering Corp.*[60] and *Central Illinois Public Service Co. v. Industrial Oil Tank & Line Cleaning Service*[61] cases (cited by one of the settling parties) as inapplicable to the direct claim by Key Tronic. The court said:

> *Cannons* and *Industrial Oil Tank* must be distinguished from the present case. In those cases, nonsettling PRPs sought indemnity from settling PRPs for prospective liability to the United States. Thus, the indemnity claims fell squarely within the situation that apparently prompted

**53.** *Id.* at 1086 (*citing Amoco Oil*, 889 F.2d at 672).

**54.** *Id.* at 1087.

**55.** *Id.* at 1086.

**56.** In *Transtech Industries*, the matters addressed in the defendants' settlement with the United States were limited to payment of the Governments' past costs. All future claims for site response actions or costs were expressly reserved. The settlement in the case before this Court differs because it expressly includes *all* site costs, thus protecting the settling defendants from actions for contribution.

**57.** *Id.* at 1086.

**58.** No. C-89-694-JLQ, slip op. (E.D.Wash. Aug. 9, 1990) (Order re: Motions for Summary Judgment, inter alia). This cite appeared in the plaintiffs' memo. This specific order is not readily available, however. Thus, the Court is forced to rely on the accuracy of the plaintiffs in quoting the holding of the *Key Tronic* court. The description of the case was gleaned from the plaintiffs' brief and from No. SC-89-694-JLQ, slip op. 766 F.Supp. 865 (E.D.Wash.1991).

In *Key Tronic*, the United States Air Force, Alumnus Fabricated Products and Key Tronic Corporation, among others, were parties who deposited hazardous waste at a landfill site, causing the contamination of nearby wells. Key Tronic spent approximately $1.2 million in response costs. In addition, the EPA and its Washington State counterpart (the "DOE") spent money responding to the well contamination. The EPA and DOE then filed a complaint and consent decree (making claims for EPA's response costs and simultaneously settling them) against Key Tronic and others. Pursuant to the consent decree, Key Tronic agreed to help fund the cleanup in the amount of $4.2 million. At the same time the consent decree was entered, the EPA entered a de minimis administrative order on consent (the "Order") under Section 122(g) with the Air Force. Under the Order, the Air Force paid $1.45 million to EPA in exchange for a release of liability and contribution protection under Section 122(g)(5).

Key Tronic brought suit seeking recovery of its independent response costs from the other involved parties and the site operator under Section 107(a)(4)(B). The Air Force moved to dismiss Key Tronic's claim based on the Order's contribution protection provisions. The court eventually held, in summary judgment, that the contribution protection provisions of Section 122(g)(5) would not bar Key Tronic's claim under Section 107(a)(4)(B).

**59.** *Id.* slip op. at 7 (emphasis in original).

**60.** 720 F.Supp. 1027 (D.Mass.1989), *aff'd*, 899 F.2d 79 (1st Cir.1990).

**61.** 730 F.Supp. 1498 (W.D.Mo.1990).

Congress to pass section 9622. Here, Key Tronic seeks to recover a portion of the costs it *incurred directly, at its own initiative, in responding to the release* at [the site]. That factual distinction makes the rationale in *Cannons* and *Industrial Oil Tank* inapplicable to this case.[62]

This same language, however, also distinguishes *Key Tronic* from the present case. Key Tronic sought to recover a portion of the costs it had incurred directly, at its own initiative, in responding to the release at the site. Here, the plaintiffs are seeking to obtain response costs not yet fully incurred, for an action taken not at its own initiative, but in response to an order by the Government. This claim falls "squarely within the situation that apparently prompted Congress to pass" Section 122.[63]

In *United States v. Hardage*,[64] the Government submitted a *de minimis* consent decree which claimed to provide protection to the settlors from the independent private response costs of the Hardage Steering Committee ("HSC") PRPs. When the United States moved the court to enter the decree, the HSC defendants opposed the entry of the decree, arguing that the decree illegally attempted to cut off their independent right to recover their response costs under CERCLA Section 107(a)(4)(B).

The court approved the order, but interpreted it to have no effect on the HSC PRPs' independent response cost claims.[65] Finding a distinct difference between a contribution claim and a response cost claim under CERCLA, the court found that the Government had no statutory authority to shield the *de minimis* defendants from the HSC's independent response cost claims.[66]

As applied to this case, first, the plaintiffs' response costs cannot be called "independent" even under the *Hardage* definition. The EPA has ordered the plaintiffs to clean up the Site pursuant to its authority under CERCLA. If the plaintiffs do not fully comply with this order, they will be subject to fines of up to $25,000 per day.[67] The plaintiffs cannot accurately describe their cleanup as "independent" in these circumstances.

Second, the plaintiffs err by claiming that their response costs do not originate from their liability under CERCLA. As discussed above, the EPA may require a PRP to satisfy its liability at a site in a number of ways. No matter which alternative the EPA utilizes, the costs incurred by the PRP (whether paid to EPA as reimbursement or paid to contractors hired directly by the PRP itself) are incurred to satisfy the PRP's liability under CERCLA.[68] If the PRP seeks to recover a portion of the costs that it has incurred at a later time, the PRP's suit is derivative of its liability under CERCLA and is a claim for contribution.

In this case, EPA has required the plaintiffs to complete the cleanup pursuant to an order under CERCLA Section 106.[69] The response costs that will be incurred by the plaintiffs result directly from the plaintiffs' liability at the site; accordingly, the plaintiffs' suit is a derivative claim in which the plaintiffs seek to shift to a third party some of the liability asserted against it by the EPA. Thus, even under the *Hardage* definition of contribution, the plaintiffs' suit to obtain reimbursement for a portion of their response costs is a suit to obtain contribution from other PRPS.

**62.** *Key Tronic*, No. C–89–694–JLQ (E.D.Wash. Aug. 9, 1990), slip op. at 9 (emphasis in original and added).

**63.** *Id.*

**64.** *See* Transcript of Hearing on Motion for Entry of Consent Decree for *De Minimis* Settlement, *United States v. Hardage,* No. Civ.–86–1401–P (W.D.Okla. Sept. 22, 1989); 750 F.Supp. 1460 (W.D.Okla.1990). The cites related to the transcript were provided by the plaintiffs. The transcript itself was not available to this Court. The District Court opinion was readily available and was reviewed.

**65.** *Id.*

**66.** *Id.* at 68–71.

**67.** 42 U.S.C. § 9606(b)(1).

**68.** *See, e.g., Industrial Oil Tank,* 730 F.Supp. at 1501, 1502–03 (PRP's satisfied their liability under CERCLA by agreeing to conduct the site cleanup).

**69.** 42 U.S.C. § 9606.

SHOULD THE FEDERAL DEFEN-
DANTS BE TREATED DIFFERENT-
LY FROM THE MAJORITY OF THE
DEFENDANTS WITH REGARDS TO
SUMMARY JUDGMENT?

 There is no basis for plaintiffs' argument that federal agencies should receive less protection from the contribution protection provisions than a non-government entity. CERCLA section 113(f)(2) provides that "persons" who resolve their liability are provided from contribution claims.[70] The term "person" as defined by CERCLA Section 101(21) expressly includes the United States.[71] Also, CERCLA section 120(a)(1) provides:

> Each department, agency, and instrumentality of the United States ... shall be subject to, and comply with, this chapter in *the same manner and to the same extent*, both procedurally and substantively as any nongovernmental entity, including liability under 9607 of this title.[72]

It is this waiver and definitional provision in CERCLA that waives the United States' sovereign immunity to claims from private parties like the plaintiffs. The plaintiffs cannot demand that the United States be a "person" for the purposes of the liability provision in CERCLA but not a "person" for the purposes of the contribution protection provisions.

The legislative history of CERCLA shows that Congress intended to provide contribution protection to federal agencies who were involved in *de minimis* settlements. Representative Glickman, in discussing the *de minimis* settlement provision, stated:

> Although [the *de minimis* settlement provision at section 122(g) ] is primarily directed toward private parties who are minimal contributors of waste or who are otherwise minimally related to the hazardous

substance problems at a facility, federal agencies may also satisfy the *de minimis* criteria at particular facilities. Thus, when federal agencies fall within the criteria of [the *de minimis* provision], they too should be treated as *de minimis* parties.[73]

The settlement terms for the federal PRPs are exactly the same as the other *de minimis* settlors. The calculation of the federal defendants' settlement payments are on the same basis and include the same 56% settlement premium that the private *de minimis* settlors paid.[74]

*Conclusion*

The effect of plaintiffs' argument, if accepted, would be to create disincentives for settlement because settlors would be required to pay twice: once to the EPA in the settlement and then again to nonsettling parties who sue for contribution. This result would punish the *de minimis* parties for settling and paying their fair share early,[75] and reward the non-settlors for holding out. The result would be fewer settlements and increased litigation. The express purpose of CERCLA Sections 113(f) and 122 would be undermined. While the result may be harsh to the plaintiffs, such was Congress' clear intent.

Plaintiffs are seeking contribution for their response costs, therefore, I recommend that the motion for summary judgment be entered against the plaintiffs.

In addition, because CERCLA is so clear and conclusive that claims of contribution cannot be brought, I recommend that this Court impose Rule 11 sanctions on the plaintiffs. The defendants who settled did so, in part, to avoid the high costs of litigation. CERCLA's settlement provisions were intended to provide "a measure of finality [to the settling parties] in return for their will-

---

70. 42 U.S.C. § 9613(f)(2).

71. 42 U.S.C. § 9601(21).

72. 42 U.S.C. § 9620(a)(1) (emphasis added).

73. 131 Cong.Rec. 34,649 (Dec. 5, 1985) (extended statement of Rep. Glickman).

74. *See* AOC ¶ 20.

75. In this case, because the *de minimis* settlors have paid a 56% premium to settle, the effect would be to require the *de minimis* settlors to pay over two and a half times their fair share.

ingness to settle."[76] Thus, the settling defendants in this case deserved the right to be insulated from this dispute once they settled with the EPA. Instead, they have incurred legal fees and other costs in defending against this action for contribution by the plaintiffs.

The court in *United States v. Alexander, supra,* found that the non-settling defendant in that case was subject to Rule 11 sanctions for filing a claim for contribution against the settling defendants.[77] In imposing sanctions, the court stated, "[t]his Court is genuinely shocked at [the non-settlor's] blatant disregard for binding statutory law and applicable and controlling Rules of Procedure. [The non-settlor's] persistent assertion of its claims for contribution from the *de minimis* defendants in the face of clearly prohibiting statutory authority is a blatant expression of its bad faith and a per se violation of Rule 11."[78] The *Alexander* court then ordered that the non-settlor pay sanctions of $10,-000.00 and that its counsel also pay sanctions of $10,000.00. The non-settlor and its counsel were also held jointly and severally liable for all reasonable fees and expenses incurred by any *de minimis* party who had to respond to the non-settlor's action for contribution.[79]

The Court should consider imposing sanctions and holding the plaintiffs jointly and severally liable for all reasonable fees and expenses incurred by the settling defendants who responded to this action.

Any objection to this Report and Recommendation must be specific and must be filed with the Clerk of Court within ten (10) days of its receipt.[80] Failure to file specific objections in a timely manner constitutes a waiver of the right to review by the district court.[81]

August 12, 1992

---

**76.** *Cannons Engineering,* 899 F.2d at 92 (*citing* H.R.Rep. No. 99–253, Part I, 90th Cong., 1st Sess. 80 (1985) U.S.C.C.A.N.1986, 2862 (legislative history of CERCLA)).

**77.** 771 F.Supp. at 841.

**78.** *Id.* at 841.

**79.** *Id.* at 841–42.

**80.** Rule 32, Local Rules of Court; Rule 72(b), FRCP.

**81.** *Park Motor Mart, Inc. v. Ford Motor Co.,* 616 F.2d 603 (1st Cir.1980); *United States v. Valencia–Copete,* 792 F.2d 4 (1st Cir.1986).