996 F.2d 1226
 23 Envtl. L. Rep. 21,317
 NOTICE: Ninth Circuit Rule 36-3 provides that dispositions other than opinions or orders designated for publication are not precedential and should not be cited except when relevant under the doctrines of law of the case, res judicata, or collateral estoppel.
OREGON NATURAL RESOURCES COUNCIL, INC., Plaintiff-Appellant,
v.
BUREAU OF LAND MANAGEMENT, Defendant-Appellee.
The CLAYTON HILL NEIGHBORS ASSOCIATION; Forest Conservation
Council; and Oregon Natural Resources Council,
Inc., Plaintiffs-Appellants,
v.
U.S. BUREAU OF LAND MANAGEMENT; and Delos Jamison,
Director, United States Bureau of Land Management,
Defendants-Appellees.
 Nos. 91-36106, 92-35376.
 United States Court of Appeals, Ninth Circuit.
 Argued and Submitted March 2, 1993.
Decided June 21, 1993.
 
 Before KILKENNY, TANG and POOLE, Circuit Judges.
 
 
 1
 MEMORANDUM*
 
 
 2
 These consolidated appeals arose out of separately filed challenges to government contracts for the harvesting of timber on federal land in the Pacific Northwest. The appellants in both actions alleged, inter alia, that the Bureau of Land Management ("BLM") had violated the Endangered Species Act ("ESA"), 16 U.S.C. § 1531-1544, by failing to consult with the Fish and Wildlife Service ("FWS") to ensure that the contracted-for logging operations would not adversely affect the habitat of the northern spotted owl. The BLM successfully moved to dismiss both actions on the ground that they were time-barred. The appellants now argue that the district court misinterpreted the relevant statute and misapplied its 15-day time limit for bringing such actions. We review de novo, see Mitchell v. United States (In re Mitchell), 977 F.2d 1318, 1320 (9th Cir.1992), and we affirm.
 
 DISCUSSION
 
 3
 Section 318 of the Department of the Interior and Related Agencies Appropriations Act for Fiscal Year 1990 ("DIRAAA"), Pub.L. No. 101-121, Tit. I, § 318, 103 Stat. 701, 745-50 (1989), popularly known as the Northwest Timber Compromise ("Compromise"), was enacted by Congress in 1989 in response to ongoing litigation involving a substantial number of timber sales contracts on public land in the Pacific Northwest and their effect on the northern spotted owl. The key provision of the Compromise for purposes of these appeals is subsection (g)(1), which states in relevant part that:
 
 
 4
 No restraining order or preliminary injunction shall be issued by any court of the United States with respect to any decision to prepare, advertise, offer, award, or operate a timber sale or timber sales in fiscal year 1990 from the thirteen national forests in Oregon and Washington and Bureau of Land Management lands in western Oregon known to contain northern spotted owls.... Provided, That the courts shall have authority to enjoin permanently, order modification of, or void an individual sale if it has been determined by a trial on the merits that the decision to prepare, advertise, offer, award, or operate such sale was arbitrary, capricious or otherwise not in accordance with law: Provided further, That any challenge to a timber sale must be filed in Federal District Court within fifteen days of the date of initial advertisement of the challenged timber sale[.]
 
 
 5
 103 Stat. at 749.
 
 
 6
 Among the arguments advanced by the appellants in both cases is that section 318(g)(1)'s 15-day time limit ought not to apply here because it is ambiguous and in irreconcilable conflict with the ESA's so-called 60-day rule, see 16 U.S.C. § 1540(g)(2)(A)(i); Save the Yaak Committee v. Block, 840 F.2d 714, 721 (9th Cir.1988) (60-day notice to agency before filing suit is jurisdictional); and, even if subsection (g)(1) is held to be applicable, its 15-day time limit should not be deemed controlling due to the presumption of judicial review of agency action. The appellants in the Clayton Hill case also argue that, even if section 318(g)(1) is held both applicable and controlling as to fiscal year 1990 timber sales, it should not apply to the Deberry Road Timber Sale ("Sale") because the Sale was readvertised during fiscal year 1991, outside the time frame of the Compromise.
 
 
 7
 "[T]he starting point for interpreting a statute is the language of the statute itself." Hallstrom v. Tillamook County, 493 U.S. 20, 25 (1989) (quoting Consumer Product Safety Comm'n v. GTE Sylvania, Inc., 447 U.S. 102, 108 (1980)). "When we find the terms of a statute unambiguous, judicial inquiry is complete except in rare and exceptional circumstances." Demarest v. Manspeaker, 111 S.Ct. 599, 604 (1991). Thus, even though a statute's "[l]egislative history can be a legitimate guide to a statutory purpose obscured by ambiguity, ... in the absence of a clearly expressed legislative intention to the contrary, the language of the statute itself must ordinarily be regarded as conclusive." Burlington N.R.R. Co. v. Oklahoma Tax Comm'n, 481 U.S. 454, 461 (1987) (citations and internal quotations omitted). Accord Board of Governors, Fed. Reserve Sys. v. Dimension Financial Corp., 474 U.S. 361, 373-74 (1986) (discussing legislative "plain purpose" doctrine).
 
 
 8
 Subsection (g)(1) unambiguously applies to any challenge to a timber sale. On the face of it, therefore, the Compromise's 15-day time limit applies to challenges under the ESA. Moreover, although the 15-day rule of subsection (g)(1) conflicts with the 60-day rule of the ESA, it would not necessarily follow that such conflict is irreconcilable and that the ESA's provision must control. See Robertson v. Seattle Audubon Soc., 112 S.Ct. 1407, 1414 (1992) ("[A]lthough repeals by implication are especially disfavored in the appropriations context, Congress nonetheless may amend substantive law in an appropriations statute, as long as it does so clearly"). Here, Congress clearly intended to effect a temporary amendment to substantive law, including the citizen suit provision of the ESA.
 
 
 9
 The appellants contend that this interpretation precludes all judicial review of fiscal year 1990 timber sales under the ESA because, by the time the northern spotted owl had been listed as a threatened species, more than 15 days had passed since the challenged timber sales contracts had been initially advertised. This scenario was anticipated by Congress: "The Forest Service and Bureau of Land Management shall also ... if the spotted owl is listed as a threatened or endangered species, consult under section 7(a)(2) of the Endangered Species Act of 1973 ... prior to the offer of any subsequent timber sale in fiscal year 1990." DIRAAA, § 318(c)(2), 103 Stat. at 748 (emphasis added).
 
 
 10
 It is clear that Congress intended the Compromise to be a one-shot, temporally and geographically limited amendment to our nation's environmental protection laws. See Robertson, 112 S.Ct. at 1410-11. Accordingly, we hold that the 15-day rule of subsection (g)(1) constitutes a narrow and temporary exception to the ESA's 60-day general rule, and therefore affirm the district court's decision in Oregon Natural Resources Council, Inc. v. Bureau of Land Management.
 
 
 11
 The only remaining issue presented for our review is whether the 15-day rule should also apply to the facts of the Clayton Hill case.[1] It is undisputed that the Sale was initially advertised and offered during fiscal year 1990, and was readvertised during fiscal year 1991 on terms and conditions substantially similar to the original ones. Under this peculiar set of facts, we do not find persuasive the appellants' attempts to distinguish the word "initial" and to read "award" as being synonymous with "offer." See DIRAAA § 318(a)(2), (g)(1), (k). Accordingly, we hold that the 15-day rule of the Compromise applies to the appellants' challenge to the Sale in the Clayton Hill case as well.
 
 
 12
 Because we find no merit to any of the appellants' remaining arguments in either appeal, the decision of the district court in each case is AFFIRMED.
 
 
 
 *
 This disposition is not suitable for publication and may not be cited to or by the courts of this circuit except as provided by 9th Cir.R. 36-3
 
 
 [1]
 The government contended, and the appellants conceded at oral argument, that the property subject to the Sale had been logged by February 26, 1993. Although this would arguably constitute grounds for dismissing the second appeal for mootness, see Headwaters, Inc. v. Bureau of Land Mgt., 893 F.2d 1012, 1015-16 (9th Cir.1989), we have elected to reach the merits of the Clayton Hill appeal